THOMAS *v.* STATE.

[78 South. 147, In Banc.]

1. CONSTITUTIONAL LAW. *Criminal law. Trial. Presence of accused. Statutes. Validity.*

Section 1495, Code 1906 (Hemingway's Code, section 1253), authorizing accused to waive his right to be present at any stage of his trial at the discretion of the court, if he is in custody and consents thereto, is valid and does not violate Constitution 1890, section 26, giving the accused a right to be heard.

2. SAME.

This statute announces a reasonable rule of procedure in criminal cases; is promotive of a fair and impartial administration of justice, and deprives the accused of no right or privilege that he had heretofore enjoyed, but merely permits him to waive a guaranteed personal privilege if he so desires.

3. CRIMINAL LAW. *New Trial. Presence of accused waiver.*

Section 1495, Code 1906 (Hemingway's Code, section 1253), provides that such waiver of his presence by the accused shall be "at the discretion of the court" and its purpose is to safeguard against the accused being denied any substantial right at his trial. and if it appears that the accused did not receive a fair and impartial trial, a new trial will be granted, although the failure to secure a fair and impartial trial was on account of his waiver of his presence.

4. CRIMINAL LAW. *Waiver of presence. Discretion of court.*

Under Code 1906, section 1495 (Heminway's Code, section 1253), where one accused of murder while on trial went from the courtroom without the knowledge of the judge or the attorneys but in the custody of an officer, for a few minutes. and made no objection, at any time, either by himself or his counsel to the trial progressing in his absence, in such case he waived his right to be present.

5. SAME.

Under this statute, the accused may waive his presence, even in a capital case.

6. CRIMINAL LAW. *Trial. Waiver of presence.*

There is no difference in value or sacredness of the right of accused to waive his presence at his trial, whether such right is granted by the Constitution, statute, or common law and it may be waived by the accused in either event.

7. CRIMINAL LAW. *Trial. Presence of accused. Duty of counsel.*

If the accused in a criminal trial voluntarily absents himself from the courtroom during his trial, it is his duty as well as the duty of his counsel to inform the court of his absence, so that the court may correct the situation.

8. CRIMINAL LAW. *Appeal. Harmless error.*

Where it does not appear from the record that the interests of accused were harmed or prejudiced by his voluntary absence from the courtroom during the examination of two

jurors one of whom was afterwards accepted and one successfully challenged, error, if any, in proceeding with the trial was harmless, and under supreme court rule 11 could not work a reversal on appeal.

9. CRIMINAL LAW. *Appeal. Harmless error.*

Only those errors which deprive the accused of some substantial right should be held reversible errors.

3. CRIMINAL LAW. *New Trial. Presence of accused, waiver.*

APPEAL from the circuit court of Holmes county.
HON. W. L. DYER, Special Judge.

Geo. Thomas was convicted of murder and appeals.

The facts are fully stated in the opinion of the court.

*R. R. Lindholm*, for appellant.

In beginning our reply to the brief of the learned attorney-general we will express regret that we find no expression in his brief which attempts to differentiate the case at bar from the case of *Warfield v. State,* 96 Miss. 170, 50 So. 561. The Warfield case is, we think, precisely in point. It seems to have been written on suggestion of error, and we presume that it was written after a most careful and painstaking consideration of the very point involved in this case at bar, to-wit: The absence of the defendant who was on trial for murder—not petit larceny, or manslaughter—from the court and jury, while petit jurors were being examined touching their qualifications to sit in this case then on trial.

When Judge WHITFIELD wrote the opinion in the Warfield case, he had within the year previous, exhausted the authorities in all the states, including the cases of his own court, and as a result had written his very learned opinion in the now leading case of *Sherrod v. State,* 93 Miss. 774, 47 So. 554. Undoubtedly the Sherrod case is the leading case in this state on this phase of the criminal law, for in it the court, in its endeavor to set at rest this matter, makes the nice distinction between the absence that is voluntary, and the

absence that is involuntary, and when they are capital, and when they are felony but less than capital, and finally when the absence occurs in misdemeanor cases. We do not think that section 1495, Code 1906, is applicable at all to capital cases. Justice Cook says so as much in the Ebb Watkins case. This court has impliedly said as much in all the long line of cases cited by us in our original brief which have been rendered during the last thirty years; for we find section 1495, Code 1906, in existence when the Warfield case was decided; also when the Sherrod case was decided, and certainly all the cases since 1906. We find this same section in the Code of 1880, as section 3075. Certainly the court had this in mind in Sherrod's case, when it stated that in capital cases the defendant could not waive his presence.

We direct the court's particular attention to the fact that in Sherrod's case, the absence of the defendant was voluntary. He had hied himself out into the country to spend the night with a friend while the jury was considering of its verdict; and there he was when the verdict was returned.

We don't know anything about Corley White's case which the court affirmed, sitting *en banc*, because we see nothing in the report save a memorandum of the case. We know this however, that this court did not overrule the Warfield case, the Sherrod case or this long line of authorities, and did not overthrow the opinion of the court as expressed by Justice Cook in the Ebb Watkins case when he said: "It is too late to overrule these decisions and adopt a new rule." For if the court in the Corley White case had overruled these decisions the court would have certainly delivered an opinion, which we conjecture would be one of some length—sudden revolutions and breaking away from long established authority don't take place without much fighting, except probably with the Bolsheviki—we also note that on the same date, probably at the

same sitting, when the Corley White case was affirmed *en banc* on some point not announced, this court through Mr. Justice HOLDEN was announcing in the case of *Hunt* v. *City of Tupelo,* 112 Miss. 178, that the absence of the defendant in a misdemeanor case when the verdict was returned, was fatal error under certain circumstances; so we presume that Corley White's case was of no value as precedent.

## AS TO DEFENDANT BEING PREJUDICED.

The learned attorney-general states that there was no prejudice done the defendant by conducting the examination of a juror during the defendant's absence from court and jury. Alongside the opinion of the attorney-general we put the opinion of this court as to this proposition; Mr. Justice COOK in the case of *Woods* v. *City of Tupelo,* 112 Miss. 132, says: "The argument is made that the defendant was not prejudiced by the error of the court. This is the stock argument so often repudiated by this court that we deem it unnecessary to comment upon it in this case."

## AS TO COUNSEL FAILING TO MAKE SOME FORMAL EXCEPTION WHEN ERROR DISCOVERED.

The attorney-general deems it of importance to direct the court's attention to the failure of counsel for defendant to do something, make some objection—exactly what I don't know—when he discovered that the defendant had been absent. I dont think that any action of counsel for defendant could have cured the error, as this court has expressly stated that the presence of the defendant cannot be waived. The time for challenging this juror peremptorily had passed when this came to the knowledge of the defendant's counsel. In the case of *Stanley* v. *State,* 97 Miss. 870, so good a criminal trial advocate as Mr. W. SHED. HILL, there representing the defendant, remained silent. He declined to suggest to the court any way out of the er-

ror there committed, and declined, to consent to any
procedure whatsoever, that tended to cure the error.
In that case when distinguished counsel assumed that
attitude, the trial court did every reasonable thing
that he could think of, even attempted to follow the
procedure suggested in *dictum* of Booker's case; but
when it came to the supreme court the case was re-
versed, and there this court held, in effect, that silence
of defendant's attorney or the failure of the attorney
then and there to accept the court's offer of a new
jury or a trial *de novo*, could in no way waive the
error, and the court winds up the opinion by quoting
very freely from *Sherrod's case,* 93 Miss. 774, to the
effect that in capital cases defendant cannot waive the
right to be present.

*Frank Robinson*, assistant attorney-general, for the
state.

The point principally argued for reversal by appel-
lant is that the court committed reversible error in
overruling the motion for a new trial, alleging that
the appellant was not in the courtroom during the
*voir dire* examination of two of the jurors. The appel-
lant has cited in his brief all the Mississippi cases on
this point, among the number being the leading cases of
*Ebb Watkins* v. *State,* 110 Miss. 438, 70 So. 457; *Sher-
rod* v. *State,* 93 Miss. 774, 47 So. 554, 20 L. R. A. (N.
S.) 509; and *Warfield* v. *State,* 96 Miss. 170, 50 So.
561.

There is testimony in the record showing that the
appellant during the *voir dire* examination, voluntarily
left the courtroom and without the knowledge or con-
sent of his counsel, went into an adjoining room and
was probably out of hearing and sight of the jury.
Appellant's counsel did not even know of the defendant's
absence from the courtroom until after the empannel-
ling of the jury had been completed.

In the *Ebbo Watkins* case, 110 Miss. 438, 70 So. 457, the court, speaking through Judge Cook, said: "It is too late to overrule these decisions and adopt a new rule because the trial court, obviously, Since that case was decided the precise question has been before this court in *Coley v. White v. State*, reported in 72 So. 904, which was affirmed by an evenly divided court sitting *en banc*. A suggestion of error was filed in the case calling the attention of the court to all of the cases cited by counsel for appellant in the case at bar, and insisting that the affirmance of the *Coley v. White* case was in effect, overruling an unbroken line of decisions in Mississippi. The suggestion of error was overruled."

Section 26, of the Constitution, confers the "right" on the defendant "to be confronted by the witnesses against him." This section makes no distinction between felonies and misdemeanors.

In the *Sherrod Case*, 93 Miss. 774, Judge WHITFIELD distinguished between felonies and misdemeanors but specifically said on page 778 that it was not a constitutional right but a "very sacred right, secured by the common law as well as by statutes." It seems to me that the court overlooked the fact that section 1495, of the Code of 1906, section 1253 of Hemingway's Code had changed the common law to the extent that the prisoner might waive his presence and I do not think that the statute made any distinction between felonies and misdemeanors in that regard. Judge WHITFIELD followed the case of *Prine* v. *Commonwealth*, 18 Pa. St. 103, in which a distinction was made between felonies and misdemeanors. I submit that this ruling is absolutely contrary to the great weight of authority, even in the absence of section 1495 of the Code. The court will keep clearly in mind the distinction laid down by the authorities where the absence was voluntary and where it was not. *Hair* v. *State*, 16 Neb. 601; *State* v. *Peacock*, 50 N. J. L. 34, 11 Atl. 270; *Boyd*

v. *State*, 45 Sou. 591; *Hills v. State*, 117 Wis. 675, 86 Am. Dec. 736; *State v. Way*, 93 Pac. 159, 14 L. R. A. (N. S.) 603; *McCorkle v. State*, 14 Ind. 39; *State v. Wamire*, 16 Ind. 359; *Frey v. Calhoun*, 107 Mich. 130, 67 N. W. 1047; *State v. Ricks*, 32 La. Ann. 1098; *State v. Perkins* (La.), 11 So. 647; *Commonwealth v. McCarthy*, 163 Mass. 458, 40 N. E. 766; *Jenkins v. State*, 135 Pac. 749; *Fight v. State*, 7 Ohio 18, 28 Am. Dec. 626; *Starr v. State*, 115 Pac. 356; *State v. Buzzell*, 59 N. H. 65; *Tooley v. State*, 40 Tex. Cr. Rep. 578, 51 S. W. 244; *Carson v. State*, 106 S. W. 337; *Davidson v. State*, 158 S. W. 1103, Ann. Cases 1915B; *Smith v. Commonwealth*, 6 Ky. L. Rep. 305; *Hite v. Commonwealth*, 20 S. W. 217, 14 Ky. L. Rep. 308; *Doyle v. Commonwealth*, 37 S. W. 153.

In the famous case of *Howard v. Commonwealth*, 118 Ky. 8, the defendant was on trial for the murder of Governor Goebel. A juror was examined privately by the court in the defendant's absence but with the consent of his counsel. The court held that the defendant's right to be present was waived and this case was affirmed by the supreme court of the United States in 200 U. S. 173; *State v. Gonce*, 87 Mo. 627; *Leo Frank v. State*, 147 Ga. 741, 83 S. E. 645, L. R. A. 1915D, 817, 59 L. Ed.

In the Mississippi cases cited by Judge WHITFIELD in the Sherrod case the question of waiver and voluntary absence was not involved and therefore does not support the proposition in question.

It seems to me very clear that section 26 of our Constitution makes no distinction between felonies and misdemeanors and since our court has held that the right to be present is not a constitutional right but one at common law, that section 1495 of the Code of 1906, has changed this common-law rule so as to permit waiver by the defendant, and the authorities which I have above set out abundantly show the weight of authority on this point. I therefore contend that this

case should be affirmed because the absence of the defendant was voluntary and not prejudicial. The absence of prejudice is affirmatively shown by the record.

HOLDEN, J., delivered the opinion of the court.

George Thomas was convicted on a charge of murder and sentenced to imprisonment for life, from which judgment he appeals. During the stage of the trial when the jury was being impaneled to try Thomas, he voluntarily left the courtroom and went to the toilet with a deputy, remaining there about ten minutes in response to a call of nature. While he was absent two jurors were examined, one of whom was excused by the state, and the other was accepted by both the state and defendant. Thomas absented himself from the trial without the knowledge or consent of the court or his counsel. His counsel was informed of the fact about thirty minutes thereafter and before the jury was finally accepted to try the case, but neither counsel nor the accused made any objection to or protest against the progress of the trial. The court and district attorney knew nothing of Thomas' leaving the courtroom until the fact appeared in the motion for a new trial, and the fact of his absence was not disputed by the state. The motion for a new trial was overruled by the court, and this action of the court is assigned here as fatal and reversible error, and is the only serious question presented by the appeal.

Counsel for the appellant ably urges that the proceedings in the absence of the accused for ten minutes, during that part of the trial when the jury to try him was being impaneled, was a denial of his right to be heard, to be present, at his trial; a right given by the common law, and guaranteed by our Constitution, section 26, which provides:

"In all criminal prosecutions the accused shall have a right to be heard by himself or counsel, or both, to

demand the nature and cause of the accusation, to be confronted by the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and, in all prosecutions by indictment or information, a speedy and public trial by an impartial jury of the county where the offense was committed; and he shall not be compelled to give evidence against himself," etc.

Counsel for appellant cites and relies upon several cases decided by this court to sustain his contention, which cases are apparently decisive of the question in his favor. The leading cases cited which seem to fortify him in his position are the *Sherrod Case,* 93 Miss. 774, 47 So. 554, 20 L. R. A. (N. S.) 509, *Warfield Case,* 96 Miss. 170, 50 So. 561, and *Watkins Case,* 110 Miss. 438, 70 So. 457. From a careful reading of all the cases cited by counsel we observe that in no case did this court especially consider and expressly pass upon the question of whether the accused may waive his presence during his trial, as provided in section 1495, Code 1906 (section 1253, Hemingway's Code), which is as follows:

"In criminal cases the presence of the prisoner may be waived, and the trial progress, at the discretion of the court, in his absence, if he be in custody and consenting thereto. If the defendant, in cases less than felony, be on recognizance or bail, or have been arrested and escaped, or have been notified by the proper officer of the pendency of the indictment against him, and resisted or fled, or refused to be taken, or be in any way in default for non-appearance, the trial may progress, at the discretion of the court, and judgment final and sentence be awarded as though such defendant were personally present in court." .

This important statute seems to have escaped the notice and consideration of this court for more than a quarter of a century. Why so, we are unable to say, but the fact that it has been overlooked or else ignored during this period is certain. What does this statute mean

and do intend it as a valid expression of the will of the legislature, to confront him by the witnesses against him. We think the meaning, purpose, and intent of the statute are plainly expressed by its language, and that it is valid and constitutional. It simply means that, in all criminal cases, the accused may waive his presence at any stage of the trial, if in custody, and the trial will proceed in his absence, provided he consents thereto; and provided, further, that such proceeding in the absence of the accused meets with the discretionary approval of the court. We think the statute announces a reasonable rule of procedure in criminal cases; it is promotive of a fair and impartial administration of justice, and deprives the accused of no right or privilege that he had heretofore enjoyed, but merely permits him to waive a guaranteed personal privilege, if he so desires.

In passing this wholesome statute, the legislature very probably had in mind that section 26 of our Constitution, which provides that "the accused shall have a right to be heard," means that the accused shall have an opportunity to be heard, that he shall not be denied the opportunity to be heard if he so desires; and, if he voluntarily and deliberately refuses to exercise this privilege and thus by his own act deprives himself of the right, then, in that event, he has waived the right. Without the statute he might be denied the privilege to waive the right. Therefore the statute is not unfavorable to the accused in allowing him the right to waive his presence.

There are other legal rights guaranteed the accused in this same section 26 which are frequently waived by him without question. For instance, the accused has a right to be heard by himself and counsel, but often the accused remains silent throughout the trial, thus waiving a right to be heard by himself; he has the right to refuse to testify in his case, yet this personal privilege is frequently waived by him; he may even waive his

right to a trial, and a plead guilty to the charge? Then why should the accused be prohibited from waiving his presence for a short period during some stage of his trial, especially when such absence appears to have done him no substantial injury?" Hill v. State, 17 45 So. 551 . . It will be observed that Section 1495, Code 1906 (section 1253, Hemingway's Code), provides that such waiver of his presence by the accused shall be "at the discretion of the court." This is a sound provision, and is a safeguard against the accused being denied any substantial right at his trial, and its purpose is to protect him, at all events, in securing a fair and impartial trial in a court presided over by a just and impartial judge. The discretion is given the court to see that the accused obtains a just trial, even though he has waived his right to be present at some stage of it. If it appeared in the lower court, or here on appeal, that the accused did not receive a fair and impartial trial by an impartial jury, a new trial would be granted, even though the failure to secure a fair and impartial trial in the lower court had been on account of waiver of presence by the accused. This safeguard is rightfully reserved in the statute, so that, in the last analysis, the court will see to it that suicide by process of law is prevented, and that no injustice is done the accused on account of his own act of waiver, or on account of any wrongful procedure by the trial court. Leo Frank v. State, 237 Mo. 657 ; Gonce, 87 Mo. 627 ; Leo Frank v. State, [?]

In view of the statute and the conclusions reached above, we hold that the appellant was in custody and waived his right to be present in this case when he voluntarily left the courtroom and remained away from his trial for a few minutes, and made no objection at any time, either by himself or his counsel, to the trial progressing in his absence. The lower court committed no error, and no reason is perceived why it may not be waived.

The courts of many different states have held that the accused may waive his presence at the trial, and that

it is not error to proceed in his absence. We cite here a few of the cases so holding in other states. *Hair* v. *State,* 16 Neb. 601, 21 N. W. 464; *State* v. *Peacock,* 50 N. J. Law, 34 11 Atl. 270; *Boyd* v. *State,* 153 Ala. 41, 45 So. 591; *Hill* v. *State,* 17 Wis. 675, 86 Am. Dec. 736; *Stoddard* v. *State,* 132 Wis. 520, 112 N. W. 453, 13 Ann. Cas. 1211; *State* v. *Way,* 76 Kan. 928, 93 Pac. 159, 14 L. R. A. (N. S.) 603; *People* v. *Bragle,* 26 Hun, 378; Id., 88 N. Y. 585, 42 Am. Rep. 269; *State* v. *McGraw,* 35 S. C. 283, 14 S. E. 630; *State* v. *Gorman,* 113 Minn. 401, 129 N. W. 589, 32 L. R. A. (N. S.) 306; *Van Houton* v. *People,* 22 Colo. 53, 43 Pac. 137; *McCorkle* v. *State,* 14 Ind. 39; *Frey* v. *Calhoun,* 107 Mich. 130, 67 N. W. 1047; *State* v. *Ricks,* 32 La. Ann. 1098; *Commonwealth* v. *McCarthy,* 163 Mass. 458, 40 N. E. 766; *Jenkins* v. *State,* 22 Wyo. 34, 134 Pac. 260, 135 Pac. 749; *Fight* v. *State,* 7 Ohio 181, pt. 1, 28 Am. Dec. 626; *Starr* v. *State,* 5 Okl. Cr. 440, 115 Pac. 356; *State* v. *Buzzell,* 59 N. H. 65; *O'Toole* v. *State,* 40 Tex. Cr. R. 578, 51 S. W. 244; *Cason* v. *State,* 52 Tex. Cr. R. 220, 106 S. W. 337; *Davidson* v. *State,* 108 Ark. 191, 158 S. W. 1103, Ann. Cas. 1915B, 436; *Hite* v. *Commonwealth,* 20 S. W. 217, 14 Ky. Law Rep. 308; *Doyle* v. *Commonwealth* (Ky.), 37 S. W. 153; *Howard* v. *Commonwealth,* 118 Ky. 8, 80 S. W. 211, 81 S. W. 704, affirmed U. S. Supreme Court, 200 U. S. 173, 26 Sup. Ct. 189, 50 L. Ed. 421; *State* v. *Gonce,* 87 Mo. 627; *Leo Frank* v. *State,* 142 Ga. 741, 83 S. E. 645, L. R. A. 1915D, 817.

In *Sahlinger* v. *People,* 102 Ill. 241, the court said: "The constitutional right of a prisoner to appear and defend in person and by counsel, to demand the nature and cause of the accusation, to meet the witnesses face to face, was conferred for the protection and the benefit of one accused of a crime, but, like many other rights, no reason is perceived why it may not be waived by the prisoner."

In *Gore* v. *State,* 52 Ark. 285, 12 S. W. 564, 5 L. R. A. 832, *State* v. *Hope,* 100 Mo. 347, 13 S. W. 490, 8 L. R. A. 608, *State* v. *Smith,* 90 Mo. 37, 1 S. W. 753, 59 Am. Rep. 4, it is held that the constitutional right of a per- son charged with a felony to be present at every stage of his trial is not infringed by a statute which permits the trial to proceed in his absence if he absents him- self voluntarily. The statutes in these states, upon which these cases rest, are similar in principle to our section 1495, Code 1906 (section 1253, Hemingway's Code), and have been held to be constitutional.

The following cases hold that the defendant's volun- tary absence from a courtroom during the examination of a juror who was challenged by defendant's counsel and did not sit in the case is no ground for reversal: *Van Houten* v. *People,* 22 Colo. 53, 43 Pac. 137; *Maxwell* v. *State,* 89 Ala. 150, 7 So. 824. Mere absence of defend- ant from the courtroom for an inappreciable length of time during the trial will not warrant a reversal, is the rule announced in *People* v. *Bush,* 68 Cal. 623, 10 Pac, 169; *State* v. *Ricks,* 32 La. Ann. 1098. It was held in *State* v. *Gonce,* 87 Mo. 627, that the voluntary absence of accused in a criminal case from the courtroom, with- out the knowledge or permission of the court, and with- out the knowledge of his own counsel, is not sufficient ground for a new trial.

But it is urged by counsel for appellant that if an ac- cused may waive his presence in a felony case, yet cer- tainly in no event can he waive his presence in a capital case. This court so holds in the *Sherrod Case, supra.* But this holding is directly in the face of section 1495, Code 1906 (section 1253, Hemingway's Code), which statute seems to have been entirely overlooked, or else ignored, in passing upon that question in the Sherrod case. The statute here makes no exception or distinction between felonies and capital cases. In fact, all capital cases are classed as felonies. It is said by the court in

the Sherrod case that the right to be present is not a constitutional right, but is a common-law right. We see no difference in the value or sacredness of the right, whether it be granted by the Constitution, statute, or the common law, and it may be waived by the accused in either event. The source from which the right comes cannot govern its value to the accused nor the privilege to waive it. It appears in the record in the case before us that the appellant, Thomas, was voluntarily absent from the courtroom only a few minutes, during which time two jurors were examined, one of whom was excused from the jury, and the other qualified as a fair and impartial juror, and was accepted by both sides.

Neither the appellant himself nor his counsel made any objection or protest at any time, nor did they do as much as notify the court of the temporary absence of the accused. But they withheld this knowledge from the court and proceeded to a trial upon the merits, and raised the point for the first time after conviction, on motion for a new trial. We think in such cases the accused and his counsel are under legal duty to inform the court of the absence of the accused, so that the judge might correct the situation at the time. By their silence and acquiescence in the progress of the trial, with secret knowledge of the fact of the absence of the accused, and the absence being voluntary, constitutes waiver by the accused of his right to be present.

Moreover, it does not appear from this record that the interests of the accused were harmed or prejudiced by his absence from the courtroom, as he could have examined the jurors when he returned, and could have excused them if he so desired. He did not do this, but accepted one of the jurors who had been examined in his absence, and this juror, with the others composing the jury, appears to have constituted a fair and impartial jury, as provided in section 26 of the Constitution; and if it had been error on the part of the trial

court, which it was not, in proceeding with the trial in the absence of the accused, the error was indeed harmless, and for which, under rule 11 (72 So. vii) of this court, we would not reverse the judgment of the lower court.

Our search and examination of the books and authorities bearing upon the progress in criminal procedure for the past six hundred years leads us to the conclusion that we are at this age approaching a more reasonable and sensible basis of procedure in criminal cases. There was a time less than one thousand years ago when all felonies were punished by death, and the accused was denied the right of a trial by jury, to be confronted by his witnesses, or to be heard by counsel or himself. In fact, the right of trial in that barbarous age was a farce, and the accused was denied any chance to be heard or to receive a fair and impartial trial in a so-called court of justice. But from time to time the many different rights that an accused now enjoys have been granted to him, from the date of Magna Charta until the nineteenth century. But the pendulum swung from the one extreme, when the accused had no rights at all, to the other extreme of the present age, when his rights are so numerous and extensive and the courts have guarded them so zealously that now, in the trial of a criminal case, the courts generally have by law and precedent become so fettered with technical rules and shackled with these rights and safeguards of the accused that it is indeed difficult for a conviction to be had without some error, technical or substantial, appearing therein and justifying a reversal.

This situation in criminal procedure, in this enlightened and progressive age, should not exist, but those errors only in the trial of a case which deprive the accused of some substantial right should be held reversible error. The pendulum should not be swung to the extreme in either direction, but there ought to be a happy

and safe medium between the extremes where the rights of ·the accused will be safeguarded to the extent only that he receive a fair and impartial trial upon the merits of his case. Technical errors which amount to errors in form and shadow, and not in substance, should be viewed by the courts only in determining whether the accused has received a just and fair trial; and the whole record of the case should be looked to and a conviction be permitted to stand, unless it appear that the error complained of has caused a substantial injustice to be done the accused, in which event the courts should readily and promptly grant a new trial, thus, after' all, securing to the accused the full benefits of a fair and impartial trial as guaranteed to him by the law of the land.

We are not prepared .to say that this opinion is in such conflict with the *Watkins, Warfield,* and *Sherrod Cases, supra,* as to necessitate overruling those cases. However, the rule announced here' is the law.

The judgment of the lower court is affirmed.

*Affirmed.*

SMITH, C. J., concurs in the result. SYKES and COOK, JJ., dissent.